IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BRIAN G. VALLEROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-12-75-HE |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI). Pursuant to an order entered by United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (TR. ____).  Both parties have briefed their respective positions and thus the matter is at issue.  For the reasons stated herein, it is recommended that the decision of the Commissioner be **REVERSED AND REMANDED** for further administrative proceedings.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Commissioner Colvin has therefore been substituted for Michael J. Astrue.

## PROCEDURAL HISTORY

Plaintiff protectively filed his applications on July 22, 2008, alleging that he became disabled as of January 31, 2000,[2] due to bipolar disorder, shoulder problems, and an amputated finger on his left hand (TR. 161). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 68-71, 74-78, 79-82, 86-91). Pursuant to Plaintiff's request, a hearing was held before an administrative law judge (ALJ) on December 2, 2009 (TR. 17-35, 92-94). Plaintiff appeared in person with his attorney, and offered testimony in support of his applications (TR. 20, 38, 40-55, 61). A vocational expert (VE) also testified at the request of the ALJ (TR. 55-60, 119-20). The ALJ issued his decision on January 21, 2010, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was thus not entitled to benefits (TR. 17-35). Plaintiff then requested review of the administrative law judge's decision by the Appeals Council, which by order dated November 23, 2011, denied his request (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner (TR. 1).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569

---

[2] The original onset date of October 1, 2005, was amended at the hearing (TR. 20).

F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing the Plaintiff's disability applications, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in gainful activity after the alleged onset date (TR. 22). At step two, the ALJ determined that Plaintiff had the following severe impairments: status post shoulder disorder, depression, and bipolar disorder (TR. 22). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that

meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 23).

The ALJ next considered Plaintiff's residual functional capacity (RFC), and found that Plaintiff could perform light work, with no repetitive overhead reaching with the right or left arm, and that Plaintiff had the concentration for unskilled work, performed in relative isolation with limited contact with peers, supervisors, and the general public (TR. 24). In light of this RFC and Plaintiff's vocational factors, the ALJ found that Plaintiff was not capable of performing his past relevant work as a network administrator, automobile salesman, or general laborer (TR. 30). Based on the testimony of the VE and using Medical-Vocational Rule 202.21 as a framework, the ALJ found at step five that Plaintiff was able to perform other work in the national economy such as office helper, merchandise marker, and collator (TR. 31). The ALJ concluded that in light of these findings, Plaintiff was not disabled, and thus not entitled to benefits (TR. 31).

## ISSUES PRESENTED

Plaintiff raises three issues on appeal. First, he claims that the ALJ failed to apply the correct legal standards in weighing the opinion of Dr. Al-Botros (Plaintiff's Opening Brief, 13). Second, he argues that the ALJ's finding at step three was conclusory and not supported by substantial evidence (Plaintiff's Opening Brief, 19). Finally, Plaintiff alleges that the ALJ's RFC finding is not supported by substantial evidence (Plaintiff's Opening Brief, 23). The undersigned finds the first issue to be dispositive of this appeal.

Plaintiff argues that although the ALJ noted the opinions by Dr. Al-Botros

contained in Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment he completed, (TR. 29, 592-608), the only reason he gave for rejecting the opinions was the fact that on four of Dr. Al-Botros' treatment notes he indicated that Plaintiff was doing fairly well:

> The Psychiatric Review Technique form completed by Adonis Al-Botros, M.D., contains several marked limitations, but the Administrative Law Judge finds that these limitations are not supported by sufficient findings and treatment notes. Progress notes of March 19, 2009, April 16, 2009, August 11, 2009, and on November 19, 2009 showed again that the claimant had appropriate physical appearance, normal speech, normal mood, appropriate affect, intact thought processes, was oriented times 3, had no delusions or hallucinations, was cooperative, hand [sic] normal sleep and normal appetite and Dr. Al-Botros noted the claimant was doing fairly well with no problems

(Plaintiff's Opening Brief, 16 (citing TR. at 29)). Plaintiff argues that this does not provide good reasons to support rejecting the opinion of the treating physician.

In making this argument, Plaintiff notes that the opinion of Dr. Al-Botros is the only opinion by any examining physician in the record (Plaintiff's Opening Brief, 16). The only other opinion by a physician in the record is the opinion of the non-examining agency physician, with which the ALJ stated that he "generally concurs" (Plaintiff's Opening Brief, 16) (TR. 29)).

Plaintiff also contends that the ALJ's decision does not indicate whether he considered the factors as set forth in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), in particular the length of the treatment relationship and the frequency of examination. (Plaintiff's Opening Brief, 14, 17). Plaintiff notes that the record shows

5

that Dr. Al-Botros treated Plaintiff at least 13 times between November 2007 and April 2009. Plaintiff argues that even if the ALJ was justified in concluding that the opinion by Dr. Al-Botros was not entitled to controlling weight, *Watkins* makes it clear that the analysis must not end there. He claims that the following factors must be considered:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins,* 350 F2d at 1300. Plaintiff argues that *Watkins* not only requires an ALJ to consider the pertinent factors and give good reasons in his decision for the weight he ultimately assigns, but must give "specific, legitimate reasons" if he decides to reject the treating physician's opinion completely. *Id.* at 1301. She

Plaintiff also contends that the ALJ's citation to a few treating records indicating that Plaintiff was doing fairly well an insufficient reason for rejecting a treating physician's opinion. (Plaintiff's Opening Brief, 15 (citing *Zemp-Bacher v. Astrue*, 477 Fed.Appx. 492, 496 (10th Cir. Apr. 18, 2012) (unpublished op.)). He argues that the Eighth Circuit has also held that "doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." (Plaintiff's Opening Brief, 18) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

Finally, Plaintiff argues that the ALJ only gave reasons to reject the opinion of Dr. Al-Botros as expressed on the Psychiatric Review Technique form, and did not evaluate the weight of opinions expressed on the Mental Residual Functional Capacity Assessment form. (Plaintiff's Opening Brief, 18). Plaintiff concludes that the ALJ's failure to follow controlling case law and the regulations in evaluating the opinion of Dr. Al-Botros is reversible error as a matter of law.

The Commissioner acknowledges the requirements for discussing the reasons for the weight assigned to a treating physician's opinion, but argues that an ALJ's failure to explicitly list all of the 20 C.F.R. §§ 404.1527(d) and 416.927(d) factors for each medical opinion is immaterial when the court can give the ALJ's decision meaningful review. (Commissioner's Brief, 4) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). The Commissioner argues that the ALJ's discussion of Dr. Al-Botros's opinion shows that the ALJ considered the length of time that Dr. Al-Botros treated Plaintiff, the nature of the treatment, the frequency of the examinations, and the consistency of Dr. Al-Botros' opinion with the evidence as a whole (Commissioner's Brief, 4 (citing TR. 27-29)). She contends that the ALJ disregarded Dr. Al-Botros' November 2009 opinions because they were not supported by sufficient findings and were actively contradicted by the doctor's own treatment notes (Commissioner's Brief, 4 (citing TR. 29)). The Commissioner claims no error on the ALJ's part in failing to mention the weight given to the Mental Residual Functional Assessment (MRC) because the opinions expressed therein were the same as those in the Psychiatric Review

7

Technique. (Commissioner's Brief, 5). She also claims that the SSA's Program Operations Manual System treats the twenty work categories contained on the MRC form as "only a worksheet," and that the ALJ did consider Dr. Al-Botros' "overall conclusion" that Plaintiff was disabled.

The undersigned agrees with Plaintiff that the ALJ's decision does not meet the legal requisites for explaining the weight assigned to Dr. Al-Botros' opinion. As noted by Plaintiff, treating source medical opinions are entitled to deference and must be either given controlling weight or assigned some lesser weight "using all of the factors provided in 20 C.F.R. [§] 404.1527." Social Security Ruling 96-2p, 1996 WL 374188, at *4. To ensure that the opinion of a treating physician receives proper deference, an ALJ must engage in a sequential analysis when performing his review of such opinions. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

First, the ALJ must determine whether the opinion deserves controlling weight. *Watkins*, 350 F.3d at 1300. Controlling weight should be given if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300. If the medical opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300. Further, the ALJ must give good reasons in the decision for the weight he ultimately assigns to the opinion. *Id.* at 1301.

Although the decision need not include explicit discussion of each factor, the record must reflect the weight the ALJ gives to the opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The decision must articulate the ALJ's reasoning such that later reviewers can identify both the weight that was actually assigned to the opinion and the reasons for that weight. Social Security Ruling 96-2p, 1996 WL 374188, at *5. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). These requirements were not met in the instant case. The ALJ's reliance on treatment notes from four visits in 2009 is not a specific, legitimate reason to reject the opinions of Dr. Al-Botros.

The medical evidence shows that Plaintiff has had significant struggles with his mental health for years. Plaintiff was admitted to the Oklahoma County Crisis Intervention Center ("OCCIC") in September 2002 with suicidal thoughts (TR. 345). Plaintiff was admitted to Griffin Memorial Hospital on three different occasions due to severe depression, with suicidal ideation on two of those occasions (TR. 237, 254, 272). In April 2004, Plaintiff was admitted to Norman Regional Hospital due to suicidal thoughts and was discharged with a diagnosis of bipolar disorder, depression and anxiety (TR. 220-21). He was again admitted to Norman Regional Hospital in April 2007. As was the case in the previous hospitalization at Normal Regional, there was no indication that Plaintiff was drinking prior to the admission, and the only diagnosis at discharge was bipolar disorder (TR. 204). The medical records include multiple

9

admissions to OCCIC due to suicidal thoughts (TR. 349, 362, 400). In September 2008, he was again admitted to OCCIC due to a suicide attempt (TR. 400). The records indicate that Plaintiff had attempted to kill himself by overdosing on prescription medications and alcohol. Plaintiff began undergoing outpatient treatment at Northcare in December 2002. (TR. 506). He self-discharged from that facility in January 2005, and the discharge diagnosis was "bipolar - depressed." *Id*. He again began receiving treatment at Northcare in January 2007 (TR. 477). It appears that during the time he was not receiving treatment he was incarcerated for a DUI; the record includes references to alcohol abuse as self-medication.  During the next three years, Plaintiff was treated at Northcare on over twenty occasions  (TR. at 429, 431, 435, 440, 444, 447, 448, 451, 455, 457, 460, 462, 473, 568, 570, 573, 575, 577, 580, 584, 586). On at least thirteen of those occasions, Dr. Al-Botros was the treating physician (TR. at 428, 430, 434, 443, 446, 448, 454, 456, 567, 569, 572, 574, 576).

On November 25, 2009, Dr. Al-Botros completed a form entitled "Mental Residual Functional Capacity Assessment," in which he opined that Plaintiff had marked limitations in the following categories:

> carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; perform at a consistent pace without an unreasonable number and length of rest periods; and complete a normal workday/week without interruption from his symptoms

(TR. 606-08) Further, Dr. Al-Botros opined that Plaintiff had moderate limitations regarding his ability to:

>       remember locations, work procedures; make simple work-related decisions; understand, remember and carry out short, simple instructions; sustain a routine without special supervision; work with or near to other people being distracted by them; interact with the general public; ask simple questions or ask for help; respond appropriately to criticism from supervisors; get along with coworkers without distracting them; maintain socially appropriate behavior; respond appropriately to changes in setting; be aware and take precautions for normal hazards; travel in unfamiliar places or use public transit; and to set realistic goals or plans on his own

(TR. 606-07).

On the same day, Dr. Al-Botros also completed a Psychiatric Review Technique (PRT) form in which he opined that Plaintiff met the requirements of listing 12.04 (TR. 592). In a later section of the PRT form pertaining specifically to listing 12.04, Dr. Al-Botros noted that Plaintiff suffered from symptoms that included the following: sleep disturbances, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, hyperactivity, decreased need for sleep, easy distractibility, and involvement in activities that have a high probability of painful consequences that he does not recognize. (TR. 595). With regard to part B of listing 12.04, Dr. Al-Botros opined that Plaintiff had a marked limitation in performing activities of daily living; marked difficulties in maintaining concentration, persistence or pace; moderate limitation with regard to maintaining social functioning; and three episodes of decompensation (TR. at 603).

Given the extensive evidence regarding Plaintiff's mental limitations, the fact that Dr. Al-Botros was a psychiatrist at the same clinic at which Plaintiff was treated for

many years, and that there were no other treating or examining mental health providers, the ALJ's cursory dismissal of Dr. Al-Botros' opinions does indeed constitute a legal error that requires reversal and remand.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge, and the pleadings and briefs of the parties, the undersigned Magistrate Judge finds that the administrative law judge's step five determination is not supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner of Social Security Administration be **REVERSED AND REMANDED** for further administrative proceedings consistent with this Report and Recommendation. The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by **March 8, 2013**, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72.

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on February 22, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE